HALL, Judge.
Plaintiff brought this suit seeking to recover the sum of $5,000.00 for appraisal services allegedly rendered to defendant plus $150.00 for out of pocket expense in connection therewith. Judgment was rendered in plaintiff’s favor for $2,150.52 and defendant appealed. Plaintiff answered the appeal praying that the judgment be increased to the sum of $5,150.00 originally prayed for.
Plaintiff is a professional real estate appraiser of thirty years experience, a member of the American Institute of Real Estate Appraisers and a senior member of the Society of Real Estate Appraisers, qualified by study and examinations.
Defendant is an experienced real estate developer who for fifteen years has promoted large projects in the New Orleans area including Parkchester Apartments, Terrytown, Claiborne Towers, Motel de-Ville and Carrol Apartments, each involving millions of dollars.
Defendant had an option on approximately seven acres of land in El Paso, Texas upon which he proposed the erection of a luxury apartment house, costing millions. In order to finance the project defendant had made an application for a loan from a mortgage company in El Paso and was in need of an appraisal from a qualified appraiser to supplement the loan application. Upon being informed there was no El Paso appraiser who would be recognized by the prospective lender he sought an accredited appraiser in the New Orleans area. Mr. Howard Gleason, one of defendant’s employees, contacted plaintiff with whom he was acquainted and arranged a meeting between plaintiff and defendant.
A meeting was held between the parties on November 20, 1963. Defendant’s son, Stephen Kapelow, was also present. This meeting resulted in a verbal agreement between the parties for plaintiff to go to El Paso and make an appraisal of the property. Preliminary architectural plans of the project, preliminary cost figures, maps and other pertinent data were made available to plaintiff. Defendant also *734 furnished plaintiff with a round-trip plane ticket to El Paso.
Plaintiff left New Orleans on Friday, November 22, 1963 and arrived in El Paso sometime that afternoon. He testified that he started work that afternoon and worked until ten or eleven o’clock that night gathering data for his appraisal; that he continued with such work throughout Saturday and Sunday and left El Paso for New Orleans Sunday night around eight or nine o’clock.
The following day plaintiff met with defendant and defendant’s son, Stephen, and explained to them that he had not been able to obtain sufficient information for an appraisal and that it would be necessary for him to return to El Paso. Defendant gave him a voucher for his plane fare and plaintiff returned to El Paso on Thanksgiving Day (November 28, 1963) arriving there at 6:45 P.M. He worked all day Friday, all day Saturday and all day Sunday and returned home Sunday evening.
Plaintiff testified in detail as to what he did on each of his trips to El Paso and also testified as to what work he did in New Orleans in connection with his appraisal. However we find it unnecessary to discuss the details thereof.
According to plaintiff’s testimony he addressed and mailed a letter to defendant dated December 7, 1963 in which he stated that in his opinion the “market value in fee simple of this property is Three Million, Six Hundred Thousand ($3,600,-000.00) dollars” and that he was enclosing an appraisal report “which includes some of the data coliected.” According to plaintiff’s testimony he also enclosed in this letter a bill for $5,000.00 for his appraisal services plus $150.00 for expenses and also a note to defendant stating that he had tried without success to reach him by telephone and that as soon as he (plaintiff) returned from a trip to Atlanta and Washington “I will be glad to discuss the report in full.”
Defendant emphatically denies ever receiving the letter of December 7, 1963 and its enclosures. However defendant admits receiving subsequent bills and demand letters from plaintiff which. he referred to his attorney.
Plaintiff testified that sometime between the day he returned from his second trip to El Paso and the day he wrote the letter of December 7, 1963 he had a telephone conversation with Mr. Stephen Kapelow, defendant’s son, and informed him that he had finalized his appraisal at $3,600,000.00 and that Stephen told him “that is not enough.” He testified that he recalled nothing else of the conversation except that he told Stephen that his report was already completed and that he was going to mail it in. Stephen testified that when he learned that plaintiff could only justify a figure of $3,600,000.00 he told him that was insufficient and for him not to render a detailed appraisal report.
The record reveals that although plaintiff prepared a detailed appraisal report which he exhibited at the trial the report was never delivered to defendant for the reason, as explained by plaintiff, he was never able to contact defendant. This report was not introduced in evidence.
The foregoing is what occurred following the verbal agreement of November 20, 1963 and is not in dispute to any extent. The basic dispute between the parties is with reference to the terms and conditions of the agreement itself.
Defendant and his son, Stephen, testified that at the meeting of November 20, 1963 it was made known to plaintiff that defendant had made application for a loan on the El Paso property and that in order to justify the prospective lender in making the loan it was necessary for defendant to produce an appraisement of $3,800,-000.00 for the project. Defendant testified that what he wanted plaintiff to do was to go to El Paso “to determine whether he could justify an appraisal of this kind of money for it for us, but with very *735 specific instructions, not make the appraisal if he didn’t think he could justify this kind of appraisal for us.”
In essence, defendant’s version of the agreement made between the parties on November 20, 1963 was that no fee would be paid plaintiff (other than his actual out of pocket expense) unless plaintiff could come up with an appraisement of $3,800,-000.00.
Plaintiff testified that at the meeting of November 20, 1963 the defendant asked “ * * * how much I would charge for an appraisal of this type. I told him it would be somewhere between five thousand dollars and six thousand dollars I would suspect, but not to hold me to it as I mentioned. He said, ‘well I believe this is about what I expected to pay for this’. Then he asked me afterwards what I would charge or would there be any difference if it was not necessary to type an appraisal report. And I said, yes.” Later in answer to questioning by the Court plaintiff testified that “if I found that this project of his was not feasible, not a feasible project in the luxury class * * * then I would not have to into (sic) such an elaborate appraisal. Therefore he asked me if my fee would be less and I said yes it would * * * ”
The District Judge obviously disbelieved defendant’s version of the agreement and we find no error in his doing so. Defendant’s version amounts in effect to saying that plaintiff agreed to produce a valuation of $3,800,000.00 or forfeit all right to any compensation for his services. Such an agreement would violate the ethics of his calling and we are loath to believe any reputable appraiser would give it any consideration whatever.
Appellant contends that plaintiff has sued on an oral contract for a sum in excess of $500.00 and that the proof adduced by plaintiff is insufficient to sustain a judgment in that it lacks the “corrob-rating circumstances” required by LSA-C.C. Art. 2277. The short answer to that contention is that plaintiff’s petition plainly shows that this is not a suit on a verbal contract but a suit in quantum meruit.
More than a hundred years ago the Supreme Court said in Camfrancq v. Pilie, 1 La. Ann. 197:
“ * * * But, it must be remembered, on the other hand, that according to the elevated morality of the civil law, no one ought to enrich himself at the expense of another; and that, where a party calls upon another to do a thing, the law, in the absence of contrary proof, supposes an obligation to pay for what is done. * * * ”
No one is presumed to perform services gratuitously and we are of the opinion that plaintiff is entitled to a judgment in some amount. The question is what amount?
Plaintiff testified that considering the urgency involved and the fact that the appraisal was made on two week ends “with the necessity of employing one full time appraiser in El Paso and using the services of my friends and acquaintances in El Paso” he believed that a fair value for the services rendered would be at least $5,000.00, the amount of the bill that he rendered.
Plaintiff later testified on cross-examination that the normal appraisal fees “for that type of work, the urgency and other conditions” would be at least $450.00 a day.
Plaintiff produced no proof beyond his own testimony relative to the fair value of the services rendered by him, and we are of the opinion that his testimony is insufficient to form the basis of a judgment without further proof particularly in the form of expert testimony by another or other expert appraisers as to the worth of the services rendered.
For the foregoing reasons the judgment appealed from is annulled and set aside and the cause is remanded for further
*736 proof of the worth of the services rendered by plaintiff and for the rendition of a judgment in plaintiff’s favor for the fair value of such services as shown by such proof plus his out of pocket expense in connection therewith together with interest and costs; costs of this appeal to be borne in equal proportions by plaintiff and defendant.
Judgment annulled and cause remanded for further proof.